IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PETER J. RUSSO, and :
JOEL MAX EADS :
        Plaintiffs :
         :
  v. : 1:CV-08-2003
         : (JUDGE VANASKIE)
RECONTRUST COMPANY, N.A., :
COUNTRYWIDE HOME LOANS, INC. :
        Defendants :

MEMORANDUM

This action stems from the foreclosure of real estate (the "Property") located at 12 San Simeon, Laguna Niguel, Orange County, California.. Plaintiffs Peter Russo and Joel Eads had a subordinate security interest in the Property as a consequence of a loan they had extended to the Property's owner, Castleline, Inc. ("Castleline"). (Pltfs.' Compl., Dkt. Entry 1, ¶ 10.)[1] Plaintiffs claim that the parties holding a superior lien position in the Property, Defendants Recontrust Company, N.A. ("Recontrust") and Countrywide Home Loans, Inc ("Countrywide"), wrongfully destroyed Plaintiffs' secured interest by conducting an illegal foreclosure sale and engaging in fraudulent and other tortious conduct. (Id. at ¶¶

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court. Citations to page numbers refer to the page number of the document on the CM/ECF electronic record.

34 - 58.) Defendants have moved for dismissal of the claims asserted by Plaintiffs, or alternatively, for a transfer of this action to the United States District Court for the Central District of California. (Dkt. Entry 10.) For the reasons stated below, Defendants' Motion to Change Venue will be granted.

I.    BACKGROUND

Recontrust, a business organized under California law, with its principal place of business in Los Angeles County, California, is a wholly owned subsidiary of Countrywide. (Pltfs.' Compl. ¶ 3.) Countrywide is a New York corporation, with its principal place of business also located in Los Angeles County, California. (Id. at ¶ 4.)

On or about October 31, 2006, Plaintiffs made a loan to Castleline, a California corporation. In exchange for the loan, Plaintiffs received a mortgage on the Property to secure Castleline's indebtedness of $306,967.68. Plaintiffs allege that the Property had an appraised value of $2,825,000. (Id. at ¶¶ 11-2.) The Property is located within the Central District of California. (Dkt. Entry 12, Ex. "A", Daniel Podolsky Decl.)

Plaintiffs allege that when they extended their loan to Castleline, the Property appeared to have $2,100,000 in senior liens. (Pltfs.' Compl. ¶ 13.) Plaintiffs assert that the value of the liens superior to their security was in fact less than $2.1 million. (Id.) Plaintiffs aver that they learned later that "approximately $550,000 of the purportedly senior liens had been satisfied and/or were apparently invalid," meaning that as of the time Plaintiffs

2

obtained a secured interest in the Property Castleline's equity in the property had a value of $1,275,00.  (Id. at ¶ 14.)

Plaintiffs allege that Countrywide claims that Chris Jackson, a relative of the owners of Castleline, took out additional mortgages with Countrywide on the Property in 2004.  (Id. at ¶ 15.)  Plaintiffs dispute the validity of these encumbrances, averring that Defendants knew or should have known that Jackson did not have the authority to encumber the property with a mortgage in the amount of $380,000, but nonetheless extended a loan in that amount with a corresponding security interest in the Property.

Countrywide sold its security interests in the Property through the secondary market, but remained the servicer of the mortgages.  (Id. at ¶ 18.)  In January of 2008, Plaintiffs learned that Defendants, without notice to any party, scheduled a foreclosure sale of the Property for January 30, 2008.  As a result of litigation initiated in California by Castleline asserting that the owner and junior lien holders were not given requisite notice , the foreclosure was stayed. (Id. at ¶ 23.)

Plaintiffs thereafter sought to protect their interest in the Property by offering to pay Defendants $1.4 million to satisfy the senior liens.  Defendants, however, demanded payment of $2,000,000, an amount Plaintiffs claim far exceeded the value of the senior liens.  In this regard, Plaintiffs reassert their contention that Defendants knew or should have known that at least one of the mortgages created by Mr. Jackson was invalid.

3

On or about February 19, 2008, Castleline agreed to the dismissal, without prejudice, of its California action, relying upon Defendants' representations that they would properly re-notice a foreclosure sale. On April 7, 2008, however, Defendants conducted a foreclosure sale without providing any notice to Castleline or Plaintiffs. (Id. at ¶ 31.) Plaintiffs allege that Defendants took title to the property by purchasing it at the foreclosure sale for an amount far below Plaintiffs' tender of $1.4 million. (Id. at ¶ 33.)

On or about April 21, 2008, Plaintiffs offered to purchase the Property for $1.5 million. Defendants did not respond to this offer. (Id. at ¶33.)

Plaintiffs filed suit in this Court on November 4, 2008, invoking diversity of citizenship jurisdiction under 28 U.S.C. § 1332, and asserting a California statutory claim for wrongful foreclosure, as well as common law claims of fraud, negligent misrepresentation, tortious interference with contract, and breach of the implied covenant of good faith and fair dealing.[2] On March 17, 2009, Defendants filed a Motion to Dismiss or Alternative Motion to Change Venue. (Dkt. Entry 10.) Oral argument on the motion was conducted on June 5, 2009.

II. DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district

---

[2] Plaintiffs have withdrawn their claim for breach of the implied covenant of good faith and fair dealing asserted in Count V of the Complaint. (Pltfs. Br. Opp'n Defs.' Mots., Dkt. Entry 14, at 5 n.5.) Accordingly, Count V will be dismissed.

4

court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The "purpose of the section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. . . ." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quotation omitted). Section 1404(a) "provides for the transfer of a case where both the original and the requested venue are proper." Jumara v. State Farm Ins., Co., 55 F.3d 873, 878 (3d Cir. 1995). "Thus, in deciding a § 1404(a) motion, the court must first determine whether the proposed transferee district is one in which the plaintiff could have initially filed the action." Tucker v. MTS, Inc., No. Civ. A. 97-4717, 1998 WL 67527, at *2 (E.D. Pa. 1998) (citing Hoffman v. Blaski, 363 U.S. 343-44 (1960)). If the moving party demonstrates that plaintiff could have filed the action in the proposed district court, then the court employs a balancing test, weighing both "private" and "public" interests, to determine whether the case should be transferred. Jumara, 55 F.3d at 879-80. District courts enjoy broad discretion to transfer an action. Jumara, 55 F.3d at 879. The moving party, however, carries the burden to "establish[] the need for transfer . . . ." Id. at 879.

    A. Venue Is Proper in the Central District of California

In pertinent part, the venue statute, 28 U.S.C. § 1391, provides:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship
may, except as otherwise provided by law, be brought only in (1) a judicial
district where any defendant resides, if all defendants reside in the same
State, (2) a judicial district in which a substantial part of the events or

5

omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

\* \* \*

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

Countrywide and Recontrust both have their principal places of business and are located in the Central District of California. (Dkt. Entry 12, Ex. "A", Podolsky Decl. ¶¶ 3-4.) Moreover, practically all of the events occurred in the Central District, where the Property is located. (See Pltfs.' Compl.) The indebtedness that was purportedly secured by the Property was extended to a California corporation and to Mr. Jackson, apparently a resident of California. The transactions were governed by California law. The foreclosure sale occurred in the Central District in April, 2008. It is thus abundantly clear that this action could have been brought in the Central District of California, and Plaintiffs do not contend otherwise.

Accordingly, transfer of venue is an available option. The pertinent private and

public factors must therefore be weighed to determine whether a change of venue is warranted.

### B. Private Factors

"Private interest factors to be considered include: the plaintiff's forum preference, the defendant's forum preference, where the claim arose, the convenience of the parties and the witnesses, and the location of books and records." J.L. Souser § Assocs., Inc. v. J § J Snack Food Corp., No. 06-CV-2047, 2007 WL 1217690, at *3 (M.D. Pa. 2007). Usually, the Plaintiffs' choice of forum, the first factor to be weighed, is of "paramount consideration and which should not lightly be disturbed." Sovereign Bank, F.S.B. v. Rochester Cmty. Bank, 907 F. Supp. 123, 126 (E.D. Pa. 1995) (quotation omitted). Nevertheless, "'the deference given to a plaintiff's choice of forum is reduced when the operative facts that give rise to the action occur in another district.'" J.L. Souser & Assocs., Inc., 2007 WL 1217690, at *3 (quoting Cameli v. WNEP-16 The News Station, 134 F.Supp.2d 403, 405 (E.D. Pa. 2001). Accord Allied Security, Inc. v. Massey Energy Co., No. 08-337, 2008 WL 4140389, at *3 (E.D. Pa. Sept. 5, 2008) ("[I]t is clear that Pennsylvania's ties to this litigation are minimal, and consequently, the deference afforded to Plaintiff's choice of a Pennsylvania forum is reduced.").

Here, it is apparent that the operative facts transpired in the Central District of California. The crux of this case is the challenged foreclosure sale, and all events pertinent

to that transaction occurred there. Moreover, Plaintiffs' interest arises out of their decision to transact business in Californian and to obtain a security interest that is explicitly governed by California law. Accordingly, reduced deference to Plaintiffs' choice of forum is appropriate.

The convenience of the parties and the witnesses, of course, must also be considered. The inconvenience to Plaintiffs is patent, as is the added expense of having to litigate on the other side of the country. Defendants, too, have the same inconvenience and expense, but would appear to be able to better afford the costs of having to respond to Plaintiffs' claims in this jurisdiction. Thus, the convenience of the parties militates against a transfer.

Defendants, however, have shown that a number of potential witnesses, some who are Defendants' employees and others who are associated with non-party Castleline, reside in California. Additionally, Defendants' documents pertaining to the relationship between Countrywide, Casteline, and Christopher Jackson, as well as materials concerning the foreclosure sale, are located within the Central District. (Podolsky Decl. at ¶ 10.) Because Plaintiffs are challenging the validity of the Jackson transactions, it is clear that litigation of his authority to encumber the Property will necessitate discovery involving only California residents and documents located only in California.

Against this array of California witnesses and evidence, Plaintiffs have only Mr. Russo and the documents he maintains located in the Middle District of Pennsylvania.

Plaintiffs do not identify any other persons, besides themselves, who would be called upon to provide discovery and to testify at trial. (Id. at 13.)

Plaintiffs contend that Defendants can use Rule 45 to subpoena witnesses, but Rule 45 would not enable Defendants to compel California residents to attend a trial in Pennsylvania. Significantly, however, California witnesses residing in the Central District of California or within 100 miles of the courthouse where the trial would be conducted in that District could be compelled to attend a trial. See Fed. R. Civ. P. 45(b)(2)(A) & (B). Plaintiffs have not identified any person whose attendance they would want to procure for a trial who could not be compelled to appear in the Central District of California.

"The convenience of the witnesses . . . is [a] particularly significant [factor]." Matt v. Baxter Healthcare Corp., 74 F. Supp. 2d 467, 469 (E.D. Pa. 1999) (citation omitted). As explained in a leading treatise on civil procedure, "courts weigh more heavily the residence of important nonparty witnesses, who may be within the subpoena power of one district but not the other." 15 Charles Alan Wright & Arthur Miller & Edward Cooper, Federal Practice and Procedure § 3851, at p.215 (3d ed. 2006). In this case, the convenience of the witnesses weighs heavily in favor of a transfer of venue.

This Court is sensitive to the expense that Plaintiffs will incur by having to litigate this case in California, and the fact that Defendants are substantial business entities that can more readily afford the cost of litigating in Pennsylvania. These considerations, however,

are tempered by the fact that Plaintiffs chose to do business in California and chose to obtain a junior security interest in California property. Defendants, on the other hand, did not enter into any transactions with Plaintiffs. Their interaction with Plaintiffs is due solely to the fact that Plaintiffs elected to take a security interest subordinate to Defendants' interest. Furthermore, Plaintiffs have not shown that their financial circumstances are such that they would be unable to afford to pursue the matter if a transfer is ordered.

This Court also recognizes that Plaintiffs are proceeding *pro se.* Notably, however, Mr. Russo is an experienced lawyer capable of providing effective representation. See Peter J. Russo, http://pjrlaw.info/attorneys (last visited Feb. 25, 2010).

Moreover, Plaintiffs' claims necessitate an examination of other California property transactions, particularly the Jackson transactions. Plaintiffs have not shown that any person with evidence relevant to that aspect of the litigation is located in the Middle District of Pennsylvania.

This Court is also mindful that Plaintiffs drafted their contract with Castleline in the Middle District of Pennsylvania, Defendants sent notices to Plaintiffs in this District, and Defendants allegedly made "misrepresentations" that were received by Plaintiffs here. (Pltfs.' Compl. ¶ 13.) Yet, none of these assertions alters the fact that the transactions that triggered this lawsuit, i.e., the superior security interests obtained by Defendants in the Property and the foreclosure sale, occurred in the Central District of California. Where, as

here, the crux of the case has its locus in the proposed transferee forum, a change of venue is appropriate. See New Trail Capital v. Northwest Co., Civil Action No. 07-2073, 2007 WL 2892949, at *5 (E.D. Pa. Oct. 4, 2007) (transferring venue to Southern District of New York and noting "[c]entral to this Court's inquiry is the fact that all of the operative events giving rise to Plaintiffs' claims occurred in New York."). In summary, the private factors weigh in favor of a change of venue. See Boers v. United States, 133 F. Supp. 2d 64, 65-66 (D. D.C. 2001) (transferring action seeking recovery for alleged wrongful destruction of foreclosure records to judicial district where the property was located and the foreclosure proceeding occurred).

### C. The Public Factors

Consideration of the "public factors" confirms that the requested transfer of venue should be granted. The public factors include: (1) the enforceability of the judgment; (2) practical considerations that make trial easier or less expensive; (3) the relative administrative difficulty related to court congestion; (4) the relative importance of the fora in deciding the controversy; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. New Trail Capital, 2007 WL 2892949, at *4.

Plaintiffs claim that California law does not apply to all claims and it is "premature to resolve any choice of law question." (Pltfs.' Br. Opp'n Defs.' Mots. at 14.) It is, however, clear that California law governs the claim of "wrongful foreclosure," and this factor weighs

in favor of transfer. In this regard, it is likely that a federal judge located in California would have greater familiarity with respect to the requirements of California law concerning notice and the defense contention that Plaintiffs' statutory claim to set aside the foreclosure sale should be dismissed because Plaintiffs did not tender payment of the full amount of the debt secured by Defendants' liens.

The practical considerations that could make the trial easier or less expensive and local interests in deciding local controversies also weigh in favor of transfer. See KAB Enterprises Co. v. Ursich Electric Products, Inc., No. 06-4361, 2007 WL 1118308, at *1 (E.D. Pa. 2007) (citing Jumara, 55 F.3d at 879). As noted above, there are relevant non-party witnesses located in California, and the parties would have the ability to compel their attendance at a trial in California, but not in Pennsylvania. Furthermore, California has a compelling interest to decide this matter, involving as it does property located in California, a foreclosure sale that occurred there, and a California statute that governed the transactions. California also has a compelling interest in assuring that security interests in property located there are valid.

Relative court congestion is at best a neutral factor. In this regard, case statistics for fiscal year 2008 indicate that the case filings for both civil and criminal cases per judgeship in the Central District of California are equivalent to those in the Middle District of Pennsylvania (496 vs. 486), and the median time from filing to trial in civil cases is shorter in

California (22 months vs. 36.5 months).  See http://www.uscourts.gov/fcmstat/index.html (last visited Feb. 25, 2010).

Plaintiffs do not argue that a judgment in their favor would not be enforceable in California.  Thus, this factor is also, at best, neutral.

In summary, two of the five public factors are neutral, while three weigh in favor of transfer.  Accordingly, consideration of the public factors favors transfer.

III.  CONCLUSION

Defendants have shown that the convenience of the parties and the witnesses as well as the interests of justice weigh in favor of transfer to the Central District of California.  Accordingly, the motion for a change of venue will be granted.  An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER J. RUSSO, and : |
| JOEL MAX EADS : |
|     Plaintiffs : |
| : |
|  v. : | 1:CV-08-2003 |
| : | (JUDGE VANASKIE) |
| RECONTRUST COMPANY, N.A., : |
| COUNTRYWIDE HOME LOANS, INC. : |
|     Defendants : |

## ORDER

NOW, THIS 25th DAY OF FEBRUARY, 2010, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT:

1. Count V of Plaintiffs' Complaint (Dkt. Entry 1) is DISMISSED, WITH PREJUDICE.

2. Defendants' Alternative Motion to Transfer Venue (Dkt. Entry 10) is granted. The Clerk of Court is directed to transfer this case to the United States District Court for the Central District of California.

                                                s/ Thomas I. Vanaskie
                                                Thomas I. Vanaskie
                                                United States District Judge